UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA WILLIAMS, | No. C 09-2183 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| MICHAEL J. ASTRUE, | **Re: Cross-Motions for Summary Judgment** |
| Defendant. / | |

Having exhausted her administrative remedies, claimant Brenda Williams seeks judicial review, pursuant to 42 U.S.C. section 405(g), of a final decision of the Commissioner of Social Security ("the Commissioner"). Williams alleges that she was improperly denied Supplemental Security Income disability benefits. Now before the court are parties' cross-motions for summary judgment. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

On May 31, 2003, Williams filed an application for Supplemental Security Income benefits under Title XVI of the Social Security Act, alleging a disability date of January 1, 1999. Docket No. 10 (Certified Administrative Transcript ("CAT")) at 74-76. In her application, Williams claimed she was unable to be gainfully employed due to back pain, leg pain and anxiety attacks. *Id.* at 85-92, 96-113. Her application was denied both initially and on reconsideration. *Id.* at 41-44, 46-50. Williams sought review of her case by an administrative law judge ("ALJ"). *Id.* at 51. The ALJ

held a hearing on December 21, 2004, that Williams and her attorney attended. *Id.* at 361-79. The ALJ held a second hearing on April 21, 2005, where Williams, Dr. Dorinson, a medical expert, and one of Williams' daughters testified. *Id.* at 380-97. On August 18, 2005, the ALJ issued a decision denying benefits. *Id.* at 13-22.

Williams appealed the decision to the Social Security Appeals Council ("Appeals Council") and then the District Court. *Id.* at 6-12, 441-45. On October 16, 2007, the court adopted a stipulation that remanded the action back to the Appeals Council, who in turn remanded the case back to the ALJ. *Id.* at 441-48. The Appeals Council ordered the ALJ to reconsider the opinion of Dr. Mariotti, an examining orthopedic surgeon, to explain the weight given to his opinion, and to obtain additional evidence regarding Williams' impairments. *Id.* at 448.[1] On July 18, 2007, the ALJ held a third hearing, at which the ALJ heard testimony from Williams and another one of her daughters. *Id.* at 535-48. At the time of the hearing Williams was 51 years of age.

Williams alleges she became disabled in January 1999, and suffers from back pain, leg pain and seizures. *Id.* at 85-92, 96-113. Williams alleges that her back and leg pain worsen significantly when sitting or standing for long periods of time; therefore, she is unable to stand for more than fifteen minutes or sit for more than twenty minutes. *Id.* at 96. Williams stated that her pain and other symptoms confine her to bed for most of the day and that she requires assistance with dressing, cooking and household chores. *Id.* at 96, 99. Beginning July 2002, Williams sought treatment for her back pain from Dr. Carmichael at the Richmond Health Center. *Id.* at 151-79. A lumbar spine x-ray showed degenerative disc disease. *Id.* at 179. A September 2002 lumbar spine MRI showed abnormal sclerosis, disc protrusion and mild-moderate foraminal narrowing. *Id.* at 151-55. In December 2004, Dr. Carmichael reported that due to degenerative back pain, Williams was unable to lift more than five pounds or sit for more than four hours at a time, and may have to miss work frequently due to her pain. *Id.* at 209. Dr. Carmichael concluded similarly in April 2005, finding that Williams could not lift more than five pounds, could not sit more than six hours a day, and may need to miss work due to her pain. *Id.* at 335.

1   On September 18, 2003, Dr. Mariotti, a consultative orthopedist, examined Williams and
2 concluded that she could sit for no more than fifteen minutes at a time, stand for no more than thirty
3 minutes while shifting side to side, and sit and stand for no more than six hours in an eight hour day.
4 *Id.* at 181-82.  Dr. Mariotti also found that Williams should be able to lift ten pounds frequently and
5 twenty pounds occasionally.  *Id.* at 182.  Dr. Pon, a different consultative orthopedist, examined
6 Williams on September 21, 2006, and concluded that Williams could sit for six hours in an eight
7 hour work-day, stand for four to six hours per day, and lift ten pounds frequently and twenty pounds
8 occasionally.  *Id.* at 468.

9   On October 10, 2007, the ALJ issued a second decision denying benefits.  *Id.* at 426-38.  In
10 reaching this decision, the ALJ applied the five-step evaluation required by 20 C.F.R. section
11 416.920(a).  The ALJ first found that Williams had not engaged in substantial gainful work since the
12 year 1980.  CAT at 431.  At step two, the ALJ found that Williams' degenerative disc disease of the
13 lumbar spine qualified as a severe impairment, but that her claimed anxiety attacks did not constitute
14 a severe impairment.  *Id.* at 431, 433.  The ALJ next found that Williams did not have an impairment
15 that met, or was medically equivalent to, an impairment listed in the regulations.  *Id.* at 434.  Since
16 Williams has no relevant work experience, the ALJ then considered whether Williams is able to
17 perform any work existing in significant numbers in the national or regional economy.  *Id.*  The ALJ
18 found that Williams has the capacity to perform the full range of sedentary work as defined in 20
19 C.F.R. section 416.927(a).  *Id.* at 435.  Thus, he found that Williams was not disabled, and denied
20 the requested benefits.  *Id.* at 437-38; 20 C.F.R. Part 404, Subpart P, App'x 2.[2]

21   On March 20, 2009, the Appeals Council denied Williams' request for review of the ALJ's
22 decision, which then became the final decision of the Commissioner.  CAT at 398-402.  The instant
23 appeal followed.

LEGAL STANDARD

This court may disturb the Commissioner's final decision "only if it is not supported by
substantial evidence or if it is based on legal error."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th

3

1 Cir. 2001). "Substantial evidence, considering the entire record, is relevant evidence which a
2 reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*,
3 10 F.3d 678, 679 (9th Cir. 1993). It is more than a scintilla, but less than a preponderance. *Andrews*
4 *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The court's review "must consider the record as a
5 whole," weighing both that evidence which supports as well as that which detracts from the
6 Commissioner's decision. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th
7 Cir. 1988). "If the evidence is susceptible to more than one rational interpretation, the court may not
8 substitute its judgment for that of the Commissioner." *Edlund*, 253 F.3d at 1156. However, the
9 Commissioner's decision should be set aside if improper legal standards were applied in reaching
10 that decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

## DISCUSSION

Williams claims that the ALJ erred by: 1) failing to properly weigh the treating and examining physicians' opinions; 2) rejecting Williams' testimony without providing clear and convincing reasons; 3) improperly disregarding third-party testimony; and 4) failing to comply with the Appeals Council's remand order. Each is discussed in turn.

I.      <u>Treating and examining physicians' opinions</u>

Williams contends that the ALJ improperly rejected the conclusions of Dr. Carmichael (treating physician) and Dr. Mariotti (examining physician), in favor of the testimony of Dr. Dorinson (non-examining medical expert), which was supported by the examination of Dr. Pon (examining physician).

   A.     <u>Treating physician's opinion</u>

A treating physician's opinion is entitled to more weight than that of an examining physician, and the opinion of an examining physician is entitled to more weight than that of a non-examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion is generally entitled to controlling weight. *Id.* If the treating physician's opinion is inconsistent with other substantial evidence, it is no longer entitled to controlling weight, but is nonetheless given

4

deference. *Id.* at 631-33. An ALJ may not reject a treating physician's opinion unless he makes findings setting forth specific, legitimate reasons for doing so based on substantial evidence in the record. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Specifically, the ALJ must state his interpretation and findings, based on substantial evidence, and include a detailed summary of the facts and conflicting clinical findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

If the treating physician's opinion is not entitled to controlling weight because it is inconsistent with other substantial evidence, then the ALJ must consider several factors when deciding what weight to give the opinion. *Orn*, 495 F.3d at 631. These factors include the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship between the treating physician and the patient. 20 C.F.R. § 416.927. Further factors to be considered when weighing any medical opinion include: the amount of relevant evidence that supports the opinion and the quality of the explanation provided, the consistency of the medical opinion with the record as a whole, the specialty of the physician providing the opinion, and the degree of the physician's familiarity with the record. *Orn*, 495 F.3d at 631; 20 C.F.R. § 416.927.

The ALJ rejected the conclusions of Dr. Carmichael, the treating physician, by stating: "based on Dr. Dorinson's testimony, I reject Dr. Carmichael's conclusions as not well-supported by medically acceptable clinical and laboratory diagnostic techniques." CAT at 435. Even though Dr. Carmichael's opinion is controverted and thus not entitled to controlling weight, her opinion is still entitled to deference, and its weight must be evaluated by applying the factors listed in the Code of Federal Regulations. *Orn*, 495 F.3d at 633. As stated above, an ALJ may not reject a treating physician's opinion unless he makes findings setting forth specific, legitimate reasons for doing so based on substantial evidence in the record. *Smolen*, 80 F.3d at 1285.

There is no dispute that Dr. Dorinson did not examine Williams. However, he made his conclusion after reviewing Williams' medical record, including the reports and clinical findings of Dr. Carmichael and Dr. Mariotti, and the medical imaging evidence. CAT at 384-89. The ALJ specified that Dr. Dorinson found that "the distribution of the claimant's pain was <u>not</u> in a neuroanatomical distribution" and that "a positive ankle jerk was not corroborated" by the evidence.

5

*Id.* at 435 (emphasis added). In contrast, Dr. Carmichael had found that "there was a neuroanatomical distribution to the claimant's pain and a positive ankle jerk." *Id.* at 434. Moreover, "Dr. Dorinson also noted that although a positive ankle jerk suggests some deficit at L1, the imaging studies showed no such deficit at L1." *Id.* Based on these findings, Dr. Dorinson "testified that there was no medical evidence of degenerative disc disease that was anything other than typical for someone of the claimant's age, and he concluded that the claimant should be able to lift 10 pounds frequently or occasionally, sit for 2 hours at a time up to 6 hours per day, stand and walk for 30 minutes at a time up to 2 hours per day, and occasionally bend and stoop." *Id.* Thus, based on Williams' medical history, Dr. Dorinson made clinical findings different from those of Dr. Carmichael, and then relied on those findings to come to conclusions regarding Williams' physical limitations.

A non-examining physician's opinion can constitute substantial evidence if supported by independent clinical findings or other substantial evidence in the record. *Orn*, 495 F.3d at 632; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Independent clinical findings include "diagnoses that differ from those offered by another physician and that are supported by substantial evidence." *Orn*, 495 F.3d at 632. Dr. Dorinson's differing diagnosis regarding Williams' condition is an independent clinical finding and thus constitutes substantial evidence to support the ALJ's decision to reject Dr. Carmichael's opinion. In addition to Dr. Dorinson's independent clinical finding, several other factors support the ALJ's conclusion. Dr. Dorinson is a specialist in the field of physical medicine and rehabilitation. CAT at 435. Moreover, his opinion was consistent with Dr. Pon's opinion, another specialist in the field. *Id.* According to the ALJ, Dr. Dorinson's testimony was also supported by the record as a whole. *Id.* In sum, the ALJ relied on specific, legitimate reasons based on substantial evidence when rejecting Dr. Carmichael's opinion in favor of Dr. Dorinson's opinion.

Even if Dr. Dorinson's opinion does not qualify as substantial evidence, the ALJ had an alternate basis to reject Dr. Carmichael's opinion—the opinion of a different examining physician, Dr. Pon. Dr. Pon performed an independent clinical examination of Williams, and found that

6

Williams had pain-inhibition weakness in her right leg, chronic back pain, and degenerative disc disease. CAT at 435. Dr. Pon relied on these clinical findings to conclude that Williams could sit for six hours per day, stand four to six hours per day, and lift ten pounds frequently. *Id.* "Findings based on objective medical tests that the treating physician has not herself considered" constitute "independent clinical findings." *Orn*, 495 F.3d at 632. Dr. Pon's findings are independent clinical findings, and therefore constitute substantial evidence upon which the ALJ may rely to reject the conclusions of Dr. Carmichael. *Id.* Further, the ALJ also considered the factors enumerated in the Code of Federal Regulation in his decision, by finding not only that Dr. Pon was a physiatrist, a specialist, but that his opinions were consistent with the record. CAT at 435. Therefore, the ALJ provided specific, legitimate reasons supported by substantial evidence supporting his decision to reject Dr. Carmichael's opinion in favor of Dr. Pon's opinion. *Magallanes*, 881 F.2d at 752; *Andrews*, 53 F.3d at 1042-43.

Alternatively, taken together, the opinions of Dr. Dorinson and Dr. Pon together provide substantial evidence on which the ALJ could rely to reject Dr. Carmichael's opinion. "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews*, 10 F.3d at 679. Dr. Pon's opinion stems from clinical findings made subsequent to an independent examination of Williams. CAT at 435. Dr. Dorinson's opinion relies on independent clinical findings made after a review of the record, including imaging data. In his order, the ALJ properly summarized and specifically discussed the substantial evidence that supports his decision to reject Dr. Carmichael's opinion. *Cf. Magallanes*, 881 F.2d at 752-53 (ALJ rejected the treating physician's opinion based on the opinion of a non-examining medical expert, which was supported by an examining physician and was consistent with the opinions of several other treating physicians).

B. <u>Examining physician's opinion</u>

The ALJ rejected the opinion of the examining orthopedist, Dr. Mariotti, in favor of Dr. Dorinson's testimony. CAT at 435. The ALJ found that Dr. Dorinson's opinion was persuasive because Dr. Mariotti's opinion was based on a single examination, as opposed to Dr. Dorinson's

7

opinion, which was based on a review of the medical record as well as Williams' demeanor during the first hearing. *Id.* Dr. Mariotti based his opinion on both an examination of Williams and a review of her medical records till date, September 2003. *Id.* at 180-82. The fact that Dr. Mariotti only examined the patient once, while a reason to give his opinion less weight than a treating physician's opinion, is not a sufficient reason by itself to reject his opinion in favor of a physician who has never examined Williams. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996). The evaluation of Williams' demeanor at the hearing also does not add significant weight to Dr. Dorinson's opinion, as all doctors had occasion to examine her demeanor—Dr. Carmichael in detail over many years, Dr. Mariotti once, and Dr. Dorinson once. As discussed above, however, the ALJ did not err in agreeing with Dr. Dorinson's conclusions. Since Dr. Dorinson's conclusions were sufficient to overcome the treating physician's conclusions, his conclusions were by definition sufficient to overcome an examining physician's conclusions. Moreover, an ALJ may reject the opinion of an examining physician in favor of a non-examining medical expert's opinion, where the medical expert's opinion is supported by another examining physician's opinion. *See Andrews*, 53 F.3d at 1042-43 (ALJ properly rejected an examining physician's opinion in favor of a medical expert's opinion where the ALJ applied the factors and found that the expert was a specialist, and the examining psychologist's opinion conflicted with five other psychologists' opinions).

     Even if the ALJ erred in adopting Dr. Dorinson's conclusions, the ALJ's rejection of Dr. Mariotti's opinion is supported by substantial evidence because Dr. Mariotti's opinion was inconsistent with Dr. Pon's opinion. Dr. Pon's opinion constitutes substantial evidence due to his independent examination of Williams. Here, two examining physicians' opinions, generally entitled to equal weight, are in direct conflict. *Andrews*, 53 F.3d at 1040. The ALJ is entitled to choose between differing medical opinions of equal weight. Indeed, that is the ALJ's function. Since Dr. Pon's independent opinion constitutes substantial evidence, the ALJ did not err in rejecting Dr. Mariotti's conclusions.

II.     Williams' testimony

Williams contends that the ALJ erred by rejecting her testimony regarding her functional limitations as not credible without providing clear and convincing reasons. Without affirmative evidence suggesting malingering, "the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if [the ALJ] makes specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1283-84. Thereafter, an ALJ's finding that a claimant lacks credibility is entitled to deference. *Frustaglia v. Sec'y of Health & Human Svcs.*, 829 F.2d 192, 195 (1st Cir. 1987). "The ALJ may consider at least the following factors in evaluating the claimant's credibility: claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." *Thomas*, 278 F.3d at 958-59.

The ALJ found that Williams' statements lacked credibility due to her inconsistent statements and her conduct during the first hearing. CAT at 436. The ALJ specifically identified two inconsistent statements. *Id.* For the period that Williams claimed she was in constant pain and spending most of her time in bed, she also stated that she had been able to pick up an eighteen pound baby and that she had been taking care of her invalid husband. *Id.* Williams thereafter attempted to explain these statements away, stating that she had picked up the baby in an emergency situation. *Id.* at 539. Williams also stated that Dr. Carmichael had been mistaken when the doctor wrote "husband" in Williams' medical record, and that the person was actually just a boarder who had lived with her for a short while. *Id.* at 540-42. Although the ALJ only cited a single statement made by Williams that referred to her husband, this statement was made contemporaneously with several others recorded in Williams' medical records by Dr. Carmichael, where Williams referred to caring for her husband. *Id.* at 215 (October 26, 2004), 217 (August 30, 2004), 219 (August 2, 2004), 221 (July 2, 2004). The ALJ properly found the "boarder" explanation inadequate, concluding that because the earlier statements were made contemporaneous with the incidents, they are more reliable than later explanations. *Id.* at 436. Secondly, the ALJ relied on his personal observation that

9

1 Williams was able to sit without discomfort throughout the entire hearing, which lasted twenty-five
2 minutes, even though she claimed an inability to sit for more than ten or fifteen minutes. *Id.* at 436.
3 These are specific, clear and convincing reasons for discounting Williams' testimony, supported by
4 consideration of the relevant factors. *Orn*, 495 F.3d at 635-39 (while an ALJ may not rely solely on
5 personal observations to discount a claimant's testimony, he may use those observations in context
6 with other indicators of the claimant's credibility in evaluating her testimony); *see Thomas*, 278 F.3d
7 at 958-60 (ALJ rejected claimant's testimony based on inconsistent statements and evidence that the
8 claimant continued to perform household chores); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574
9 F.3d 685, 693 (9th Cir. 2009) (ALJ properly rejected claimant's testimony on the basis of
10 inconsistencies between his written statements regarding his disability, and his record of volunteer
11 and personal activities, where he was undertaking activities beyond his claimed ability level). The
12 ALJ did not err.

13 III.     Third-party testimony

14 Williams contends that the ALJ erred by rejecting three written statements submitted on her
15 behalf and by rejecting the testimony of her daughters. An ALJ must consider lay testimony
16 regarding a claimant's symptoms, unless he expressly declines to do so and provides reasons
17 germane to each witness for disregarding the witness' testimony. *Lewis v. Apfel*, 236 F.3d 503, 511
18 (9th Cir. 2001). Lay testimony regarding symptoms or a claimant's ability to work is competent
19 evidence and "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467
20 (9th Cir. 1996).

21 The ALJ found the three written statements to be dependent on the claimant's own
22 statements, and dismissed them as unpersuasive because Williams lacked credibility. This reason is
23 specific to these three witnesses, and the witness statements are indeed reliant on Williams'
24 complaints, rather than on personal observations. *See* CAT at 518-20 (statements generally relate to
25 complaints made by Williams). Therefore, the ALJ properly rejected these three written statements.
26 *Valentine*, 574 F.3d at 694 (proper to reject lay witness' statements merely repeating complaints of
27 claimant if claimant's statements are not credible).

28

10

The ALJ also rejected the daughters' testimony because they were based on Williams' statements, and failed to explicitly consider the extent to which the daughters' testimony was based not on subjective complaints by Williams but instead on their objective observations of her symptoms. *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (ALJ failed to consider the extent and credibility of independent observations of claimant made by family members when he dismissed their statements as reliant solely on claimant's statements). "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill*, 12 F.3d at 918-19. Tamika Cooper, Williams' daughter, testified at the first hearing that she observed Williams being unable to reach high or bend down to access items around the house, had helped Williams with dressing, and that Williams was unable to sit or stand for any length of time. CAT at 392-93. Keaira Cooper, another one of Williams' daughters, testified at the third hearing that Williams was limited in her ability to reach or bend, required help with household tasks including laundry and cooking, needed aid with bathing, and was unable to sit for long periods of time. *Id.* at 543-46.

Although the ALJ rejected the daughters' testimony, he found that the testimony, even if credited fully, did not overcome Williams' earlier testimony that she had been able to perform activities consistent with sedentary work. CAT at 436. Given the discussion above, this finding is not in error. Since the ALJ's decision did not turn on whether the daughters' testimony is credible, this error, if any, is harmless. *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006) ("we hold that where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

IV.  Appeals Council remand order

Williams contends that the ALJ failed to comply with the remand order from the Appeals Council by failing to fully explain the weight given to Dr. Mariotti's opinion. The ALJ complied with the order by reconsidering and explaining the weight he gave to Dr. Mariotti's opinion. CAT

11

at 435. While the description of Dr. Mariotti's examination is largely the same between the two written decisions, the second decision includes further analysis regarding the weight given to Dr. Mariotti's opinion. The ALJ compared it to Dr. Dorinson's opinion and specified the relative weight given to each. CAT at 20, 435. The ALJ thus complied with the Appeals Council's order.

CONCLUSION

Plaintiff's motion for summary judgment is DENIED. Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: September 7, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

12

**ENDNOTES**

1.	The parties dispute the beginning of the period at issue. Williams asserts that the period at issue is the period from May 2003 to April 2006. Defendant contends that the period is from January 1999 to April 2006. Although the Appeals Council defined the end of the period as May 1, 2006, it did not identify the date the period began. CAT at 447. The court does not reach this issue as it is not necessary to the resolution of the cross-motions.

2.	In the penultimate paragraph of the ALJ's decision, CAT at 437, the ALJ states that Rule 201.21 of the Medical-Vocational Guidelines "directs a finding of 'disabled' during the period January 1, 1999 to May 12, 2006, and I so find." This is obviously a scrivener's error since it is wholly at odds with the rest of the ALJ's decision and his Findings which hold that pursuant to the same Rule "a finding of 'not disabled' is required". *Id.* at 438.